IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ANTHONY S.,[1]

      Plaintiff,

      v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

Civil Action 3:23-cv-061
Judge Michael J. Newman
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Anthony S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed his application for benefits on November 24, 2020, alleging that he has been disabled since March 18, 2020, due to major depressive order/PTSD, sleep apnea, tinnitus, asthma, and right knee patellofemoral pain syndrome. (R. at 175-81, 199.)

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff's application was denied initially in March 2021 and upon reconsideration in May 2021. (R. at 57-77, 98-102.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 104-05.) Administrative law judge Heidi Southern (the "ALJ") held a telephone hearing on October 18, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 30-56.) A vocational expert ("VE") also appeared and testified. (*Id.*) On December 20, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-29.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-8.) This matter is thus properly before the Undersigned for review.

## II.  RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to his conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.  ADMINISTRATIVE DECISION

On December 20, 2021, the ALJ issued her decision. (R. at 12-29.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025. (R. at 17.) Then, at step one of the sequential evaluation process,[2] the ALJ found that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?

Plaintiff has not engaged in substantial gainful activity since March 18, 2020, the alleged onset date. (*Id.*) The ALJ also found that Plaintiff has the following severe impairments: asthma; obstructive sleep apnea; obesity; depressive disorder; anxiety disorder; post-traumatic stress disorder; and alcohol abuse disorder. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and/or walk 6 hours each out of an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, and atmospheric conditions, as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles; no exposure to unprotected heights or moving mechanical parts; occasional contact with coworkers, supervisors, and the general public as part of job duties; no requirement to perform conflict resolution or persuade others; and occasional changes in an otherwise routine work environment.

(R. at 19-20.) Then at step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as an aircraft mechanic and diesel mechanic. (R. at 24.) At step five, relying on

---

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a folder, inspector, and packager. (R. at 24-25.) The ALJ then concluded that Plaintiff has not been disabled since March 18, 2020. (R. at 25.)

IV. **STANDARD OF REVIEW**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a

substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. **ANALYSIS**

Against that background, Plaintiff submits three assignments of error, the first two of which relate to the ALJ's evaluation of the opinions of Dr. Owen Ward, Plaintiff's treating psychologist. (ECF No. 10 at PAGEID ## 773-779.) First, Plaintiff argues that the ALJ erred "by dismissing Dr. Ward's October and November 2021 opinions because Dr. Ward did not base his opinion on 'objective examination data.'" (*Id.* at PAGEID ## 774-775.) Second, Plaintiff argues that the ALJ inadequately reviewed the consistency of Dr. Ward's opinions with the rest of the record. (*Id.* at PAGEID ## 775-777.) Finally, Plaintiff argues that the ALJ "grossly mischaracterized the record in her decision," specifically regarding Plaintiff's suicidality and severe depressive disorder. (*Id.* at PAGEID ## 777-779.) The Undersigned will address each of these arguments in turn, first beginning with the two arguments relating to the ALJ's consideration of Dr. Ward's opinions.

1. **The ALJ's Discussion of Dr. Ward's Opinions.**

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical

---

[3] Plaintiff's applications were filed after March 27, 2017. (R. at 593-606.) Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not

6

defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors.  20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).  In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above.  20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).  Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that background, Plaintiff first takes aim at the ALJ's discussion of the supportability of Dr. Ward's opinion. Specifically, Plaintiff highlights the ALJ's comment that Dr. Ward did not base his opinion on "objective examination data," arguing that "the law recognizes that mental health professionals like Dr. Ward must use patients' subjective reports to treat them and make conclusions regarding their limitations in the workplace." (ECF No. 10 at PAGEID ## 774-775.) This argument is not well taken, however, because Plaintiff overlooks the bulk of the ALJ's discussion of Dr. Ward's opinion. While it is true that the ALJ noted that "Dr.

8

Ward's own treatment notes . . . do not include much objective examination data," Plaintiff fails to acknowledge the ALJ's prior discussion of Dr. Ward's notes. (R. at 23.) In fact, the ALJ spent considerable time evaluating Dr. Ward's own examination findings:

> [Plaintiff's] mental health treatment notes, including as recently as February 2021, indicate that [Plaintiff] writes music and poetry and is a primary caregiver for his son. **[Plaintiff's] objective mental status examinations are mostly normal, except for depressed mood.** Dr. Ward's own treatment notes rarely include any objective findings, and instead, in the objective section of his notes, Dr. Ward simply repeats [Plaintiff's] own subjective complaints. [Plaintiff] started treatment in late 2020, and **notes show that his insight and judgment as improved since treatment compliance**. For instance, **in 2020, during [Plaintiff's] very early treatment course, Dr. Ward performed a mental status examination and found that [Plaintiff] has intact insight and moderately impaired judgment. Dr. Ward also found that [Plaintiff] had intact though[t] processing, normal thought content, cooperative attitude, mildly impaired psychomotor activity, intact abstraction; and full orientation. Dr. Ward handwrote some notes on that examination, where he indicated that [Plaintiff] had a "history" of some things and appeared to repeat [Plaintiff's] subjective reports. Dr. Ward then went on to indicate that [Plaintiff] has significant limitations in almost every area of work ability, despite his seemingly mild to moderate examination findings. Indeed, the severity of Dr. Ward's opinion did not mesh with the severity of his examination findings.** The apparent explanation for such a discrepancy would be that Dr. Ward based his opinion on [Plaintiff's] subjective reports, since they clearly are not supported by his own mental status examination or other objective notes of record. Dr. Ward's treatment notes do not objectively support his opinion that [Plaintiff] has marked and extreme limitations, even with treatment and compliance. Instead, Dr. Ward appeared to base his opinion on [Plaintiff's] subjective complaints, which is reflected in his handwritten notes.

(R. at 22 (emphasis added; internal citations omitted).) This discussion clearly shows that the ALJ distinguished Dr. Ward's own "mild to moderate examination findings" from his opinion that Plaintiff had "significant limitations in almost every area of work ability," setting the table for his ultimate conclusion regarding the supportability of Dr. Ward's opinion. (*Id.*)

For this reason, while the ALJ did mention that Dr. Ward's notes were often handwritten, and that they often echoed Plaintiff's subjective complaints, Plaintiff is incorrect to suggest that it was on these bases that the ALJ dismissed Dr. Ward's opinions. (ECF No. 10 at PAGEID ##

9

774-775.)  Rather, the ALJ clearly explained that it was Dr. Ward's examination findings which led the ALJ to conclude that Dr. Ward's opinions were only "minimally persuasive":

> In October and November 2021, [Plaintiff's] psychologist, Dr. Ward, submitted opinions. Dr. Ward noted that [Plaintiff] had been in treatment for about one year at the time of his updated opinion. Curiously, **while the treatment notes show that [Plaintiff's] judgment improved, and mental status examinations show mostly normal functioning, Dr. Ward concluded that [Plaintiff] has marked and extreme limitations**. Dr. Ward's own treatment notes, which are mostly handwritten, do not include much objective examination data. Instead, in the objective section of his notes, he simply repeats [Plaintiff's] subjective reports, or clearly basis his assessment on [Plaintiff's] subjective reports. Other counseling notes show normal mental status examination. **Dr. Ward's conclusion is inconsistent with the overall objective evidence, and is not supported by his own treatment notes**. Dr. Ward's opinion is also contradicted by other psychologist opinion evidence that is consistent with objective notes. Therefore, **Dr. Ward's opinion is minimally persuasive**.

(R. at 22 (emphasis added; internal citations omitted).)  The Undersigned finds no error in this conclusion, and finds that the ALJ adequately discussed the internal supportability of Dr. Ward's opinion, so Plaintiff's first assignment of error is not well taken.

As to Plaintiff's second assignment of error, Plaintiff submits that the ALJ "mischaracterized or ignored evidence," arguing that the ALJ "did not cite any of Dr. Ward's treatment notes to support her claim that [Plaintiff's] mental health improved so measurably as to render Dr. Ward's opinion of [Plaintiff's] workplace limitations unfounded."  (ECF No. 10 at PAGEID ## 775-777.)  But this is not an accurate characterization of the record.  To the contrary, the ALJ cited to dozens of Dr. Ward's own treatment notes as support for her conclusion that Plaintiff's "insight and judgment [] improved" after Plaintiff began complying with mental health treatment.  (R. at 22 (citing R. at 524-543, 588-597, 609).)

Plaintiff also argues that "the ALJ erred by broadly and wrongly claiming that the entire record is inconsistent with Dr. Ward's opinions."  (*Id.* at PAGEID # 777.)  But this also

10

mischaracterizes the ALJ's decision, as the ALJ never said that the "entire record" was inconsistent with Dr. Ward's opinions. Rather, the ALJ noted that the "overall objective evidence" from Dr. Ward's records was inconsistent with Dr. Ward's opinions, as well as "other psychologist opinion evidence." (R. at 23.) Specifically, the "other psychologist opinion evidence" to which the ALJ referred was that from the State Agency psychologists, Dr. Johnston and Dr. Delcour, whose opinions the ALJ discussed and concluded was "most consistent with the overall objective evidence." (R. at 22.) To the extent Plaintiff believes that the ALJ should have considered other evidence,[4] such an argument amounts to nothing more than an impermissible request to weigh the evidence differently. *See Tracy R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3332, 2023 WL 4539858, at *6 (S.D. Ohio July 14, 2023) (explaining in a social security case that "the Court cannot reweigh the evidence" (citation omitted)). For these reasons, Plaintiff's second assignment of error is not well taken.

**2.      The ALJ's Discussion of Plaintiff's Suicidality.**

Finally, Plaintiff argues that the ALJ "grossly mischaracterized the record in her decision." (ECF No. 10 at PAGEID ## 777-779.) Plaintiff argues that the ALJ only referenced

---

[4] Plaintiff specifically argues that the ALJ should have considered opinion evidence from Dr. Kenneth Farr, a VA Medical Center psychologist. (*See* ECF No. 10 at PAGEID # 777.) On November 4, 2020, Dr. Farr completed a Disability Benefits Questionnaire in conjunction with Plaintiff's VA disability rating (70%). (R. at 334-346.) As the Commissioner correctly observes, however, "[d]ifferent standards are used for VA disability," and the ALJ is not obligated to "provide any analysis about how [she] considered such evidence." (ECF No. 15 at PAGEID # 797 (citing 20 C.F.R. § 404.1520b(c), (c)(1); 20 C.F.R. § 1504).) Plaintiff did not dispute the Commissioner's argument on this point, but to the extent Plaintiff has not abandoned this argument, the Undersigned agrees that the ALJ did not err in her evaluation of Dr. Farr's Disability Benefits Questionnaire. *See Gibbas v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-400, 2021 WL 4451669, at *4 (S.D. Ohio Sept. 29, 2021) ("Because [Plaintiff's] claim was filed after March 27, 2017, the ALJ was not required to provide any analysis of the VA's disability rating.").

Plaintiff's suicidality one time, in passing, which Plaintiff believes "indicat[es] some baseless doubt that [Plaintiff] actually attempted suicide" and "indicates that [the ALJ] avoided information that would lead her to conclude that [Plaintiff] cannot handle the stress and interaction involved in working." (*Id.* at PAGEID # 778.) Plaintiff also argues that the ALJ's reasoning for concluding that Plaintiff has mild limitations in the area of concentrating, persisting, or maintaining pace in the workplace "is entirely unclear." (*Id.*)

The Undersigned disagrees. First, it is clear to the Undersigned that not only did the ALJ consider Plaintiff's suicidality, she expressly discussed Plaintiff's mental health treatment *after* purportedly attempting suicide. (R. at 19.) Specifically, the ALJ found that Plaintiff's "judgment and insight have consistently been noted to be fair and intact, especially since engaging in regular [mental health] treatment," contrasting a July 7, 2020 examination report which indicated that Plaintiff had suicidal ideations "2 [days] ago" from a January 15, 2021 examination report which indicated Plaintiff had no suicidal ideations. (*Id.* (*comparing* R. at *with* R. at 555, 688).)[5] While Plaintiff surely believes that the ALJ should have afforded greater weight to Plaintiff's history of attempting suicide (and appears to be offended at the ALJ's choice of words regarding such a serious event), the Undersigned finds no error with the ALJ's discussion of Plaintiff's subsequent mental health treatment, and finds the ALJ's conclusion to be supported by substantial evidence.

The Undersigned likewise finds no error with the ALJ's conclusion that Plaintiff has a mild limitation with regard to concentrating, persisting, or maintaining pace, as the ALJ cited an abundance of medical record evidence which "indicate that [Plaintiff] had some level of

---

[5] The Undersigned notes that Plaintiff's January 15, 2021 examination record also indicates that Plaintiff was a "minimal" suicidal risk. (R. at 556.)

impairment in this area," but not a moderate limitation "as evidenced by [Plaintiff's] normal objective mental status findings," which the ALJ noted was found "consistently" throughout the record. (R. at 19.) Again, it appears that Plaintiff believes that the ALJ should have weighed these pieces of evidence differently, but that is not the Court's job. *Tracy R.*, 2023 WL 4539858, at *6 (explaining in a social security case that "the Court cannot reweigh the evidence" (citation omitted)). Accordingly, Plaintiff's final assignment of error is not well taken.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's

13

report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**Date: January 25, 2024**                    */s/ Elizabeth A. Preston Deavers*
                                              **ELIZABETH A. PRESTON DEAVERS**
                                              **UNITED STATES MAGISTRATE JUDGE**